In the Matter of the Application of GEORGE A. HEIDT, Petitioner, for an Order of Certiorari against LEWIS J. VALENTINE, Police Commissioner of the City of New York, and HAROLD FOWLER, Acting Police Commissioner of the City of New York, Respondents.

First Department, December 17, 1937.

*John J. McNaboe*, for the petitioner.

*Henry J. Shields* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*], for the respondents.

GLENNON, J.   The petitioner, George A. Heidt, a patrolman in the police department of the city of New York, under date of June 18, 1936, was charged with a violation of the rules and regulations and neglect of duty, in that

" 1. Said patrolman did, at or about 8:25 A. M., June 9th, 1936, in hallway of premises 1 West 30th Street, without the permission of the Police Commissioner, talk for publication with one Benjamin Markowitz, a reporter employed by the *New York Evening Journal*, on police business, the substance of said talk being published in the final extra edition of the *New York Evening Journal* on June 9th, 1936, to wit:

" ' I haven't the remotest idea of what they mean by that.

" ' I have been warned that it will cost me my job if I talk to newspapermen, but you've caught me on the wing and what can I do? I'll buy you and your photographer a new suit of clothes if you can show that at any time during my 21 years of service I have been the subject of Departmental charges.

" ' I reported for duty at the Elizabeth Street station one morning at eight o'clock some time ago.'

" ' Who gave you the assignment? '

" ' Oh, that was a routine matter.'

" ' How did you get the assignment? '

" ' Over the telephone.'

" ' Heidt, you know I'm a newspaper man.   I'd like to know who gave you the assignment? '

" ' You could find out at headquarters.   See that (pointing to a white handkerchief), well, it's no cleaner than my record in the Police Department.

" ' Get the Police assignment list.   That'll tell you.

" ' It's a nasty position for me to be in.   I've only got a few years more to go to retirement.   There isn't anyone in the department who can lay a finger on me.   I'd be many kinds of a damn fool at this late date to take any chances.' "

The petitioner appeared at police headquarters on July 2, 1936, and an adjournment was taken until July tenth, when he entered a plea of not guilty.   Witnesses were called, including the reporter.

It developed upon the hearing that the charges and specifications were prepared by Chief Inspector John J. Seery, who testified that the charge was based upon a violation of rule 173 of the rules of the police department, which reads as follows:

" 173. A member of the Department shall treat as confidential the official business of the Department. He shall not talk for publication, nor be interviewed nor make public speeches on police business; nor shall he impart information relating to the official business of the Department to anyone, except: * * *

" d. A representative of the press, upon establishing his identity, may be advised of the current news if the ends of justice are not thereby defeated."

In the course of his testimony the chief inspector said that he could not recall that he had ever before drawn up specifications of a similar nature against any other officer, and, further, in substance, that nothing prompted the filing of the charge except the fact that the alleged interview appeared in the newspaper. After the trial was concluded the petitioner was found guilty and fined ten days' pay.

The so-called interview with the representative of the press in the hallway of the premises where Patrolman Heidt resided did not tend in the least to defeat " the ends of justice " as that term is used in subdivision d of rule 173. According to the testimony of the police commissioner, Heidt was under investigation concerning his alleged misconduct during the Luciano trial —" following that, Heidt was directed to report to the Chief Inspector's office, and relieved from all other duty." Apparently the police commissioner was of the opinion, as indicated by his testimony, that the " ends of justice " in this case had to do with an investigation which might be the basis of a departmental trial.

It is quite clear from reading the specifications together with the testimony of the reporter that Heidt, instead of granting an interview, sought to avoid it. We have reached the conclusion, therefore, that the petitioner did not violate rule 173, and, consequently, should have been found not guilty on that charge.

Before going into the second set of charges which were preferred against the petitioner, it would be well, as long as the Luciano case was referred to by the police commissioner, to set forth some facts which may have been the basis of these charges. The records of this court show that Heidt was called by one of the defendants as a witness in the Luciano case. He testified in substance that he had been a member of the police department for twenty-one years. About April 12, 1936, together with other police officers, he was assigned to take charge of certain female witnesses. He continued

in the discharge of his duty down to and including the time of the trial. During the course of his testimony, although he seemed to be somewhat reluctant to divulge facts which might be deemed helpful to the accused, he admitted that he, in company with a special assistant district attorney, had taken one Mildred Harris from the Woolworth building to a resort known as Leon & Eddie's. He fixed the time of their arrival at two-thirty A. M., and said they stayed about three-quarters of an hour. They left about three A. M. and went to the Dizzy Club, where they remained until four A. M. In the meanwhile, Mildred Harris had become " pretty well intoxicated." The three then took a cab and the assistant prosecutor left them upon arriving at his home. He further gave testimony to the effect that on some occasions when he brought this particular witness to the special prosecutor's office she went in sober and came out slightly intoxicated; that it was the habit of Miss Harris to consume brandy and that all the drinks and food consumed were paid for by the State.

The second set of charges, dated June 23, 1936, contained the following specifications:

" 1. Said patrolman did, prior to April 19, 1934, at divers times and places, aid and abet in violations of law, by making and placing bets of sums of money on various horses running in horse races at various race tracks, some of which race tracks were located within the City of New York, and all of the other race tracks being located within the State of New York.

" 2. Said patrolman did, at divers times and places, aid and abet in violations of law by making and placing bets of sums of money with various bookmakers and race horse poolroom proprietors on various race horses running in horse races at various race tracks.

" 3. Said patrolman, not having been so assigned, on divers dates, did visit and frequent various race tracks, as frequently as four or five days of a week, between the spring and the fall, for a number of years.

" 4. Said patrolman did, at divers times and places, aid and abet in violations of law, by engaging and participating in professional gambling games, commonly known as ' Floating Crap Games,' which were operated within the State of New York.

" 5. Said patrolman did fail and neglect, at divers times and places, to take proper and appropriate police action, or make any arrests, for violations of the gambling laws committed in his presence within the State of New York.

" 6. Said patrolman did fail and neglect to satisfactorily explain deposits of $74,500 in various savings banks during the eight (8) year period from 1926 to 1933, inclusive."

On July 2, 1936, the petitioner entered a plea of not guilty. These charges were prepared by Deputy Chief Inspector McGoey. Evidence apparently designed to sustain the charges was adduced. Under date of August 31, 1936, the defendant was found not guilty of all the charges with the exception of that contained in the sixth specification. Based upon that determination he was dismissed from the police department of the city of New York.

The evidence offered to sustain this charge was documentary in character in that for the most part it represented a transcript of certain testimony which the petitioner and his wife had given in an examination which was conducted at the office of the commissioner of accounts. Whether or not Heidt was subpœnaed to appear at that office, or directed by one of his superiors in the police department to attend, is not quite clear from the record. There is sufficient, however, to indicate that Heidt was examined by the same special counsel concerning his bank accounts in the city-wide investigation, and no charges were preferred against him at that time.

In addition to the excerpt read from the transcript of Heidt's testimony, one Frank Altschul, an accountant employed by the commissioner of accounts, after tracing deposits and withdrawals made by Heidt and his wife in various accounts, testified that the total deposits amounted to $77,910.53 for the period of 1926 to 1933, and the total withdrawals amounted to $78,000.94. In making his computations, however, he said: " Oh, I am not taking the opening balance. He started with an opening balance. I am only taking the deposits. He started with an opening balance prior to January first." In other words, he did not consider what had been deposited during 1925 or in previous years. Finally, he testified that the balance at the end of 1933, of all accounts, was $10,232.34.

During the period covered in the specification it appears that Elizabeth Heidt, the wife of the petitioner, had received a considerable amount of money from her mother and later from her mother's estate. There was no proof adduced to indicate that the explanation given by Heidt and his wife with reference to withdrawals and deposits was false or not well founded. There is nothing in this record which tends to show that Heidt was guilty of accepting bribes or that the deposits and withdrawals were not legitimate. It is exceedingly difficult to understand, therefore, how it is possible for one to reach the conclusion, based upon the evidence in the record, that Patrolman Heidt " did fail and neglect to satisfactorily explain deposits of $74,500 in various savings banks during the eight (8) year period from 1926 to 1933, inclusive."

If the petitioner gave false testimony in the Luciano case it would have been an exceedingly simple matter for the police department to have tried him upon that charge.

We conclude, therefore, that the determinations of the police commissioner as to both of the charges upon which the petitioner was found guilty should be annulled, the fine remitted and the petitioner reinstated, with fifty dollars costs and disbursements to the petitioner.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Determinations unanimously annulled, the fine remitted and the petitioner reinstated with fifty dollars costs and disbursements to the petitioner.